(910 P.2d 865)
No. 73,630

In the Matter of the Estate of DANNY EUGENE OSTRANDER,
Deceased.

Opinion filed
February 2, 1996.

*Tim J. Larson*, of Larson & Schainost, L.L.C., of Iola, for appellant Carroll
Cummings.

*Sheryl A. Beagley* and *Jill E. Chard*, of Bussell and Chard, Attorneys, of Chanute, for appellee Jay Fowler, administrator.

Before PIERRON, P.J., ELLIOTT and ROYSE JJ.

ELLIOTT, J.: Carroll Cummings appeals the district court's order in a probate proceeding that he return a Bobcat loader and trailer (hereafter Bobcat) purchased from Tricia Ostrander, a co-administrator of the Danny Eugene Ostrander estate.

We affirm.

The facts necessary for a determination of this appeal are neither complex nor overly extensive. Danny Ostrander died on July 4, 1993. On July 9, 1993, Tricia and Jay Fowler were appointed special co-administrators with authority to continue to conduct and manage Danny's construction business to "such extent as is determined to be in the best interests of the decedent's estate." On the

same day, letters of special administration were filed containing the same language.

At some time later, Tricia called Cummings about his purchasing a Bobcat. Cummings knew Danny had died and did not seek any advice as to whether Tricia had authority to sell the Bobcat; Tricia did not tell him she was an administrator of Danny's estate. Since Tricia was "running the show," Cummings assumed she was the boss and had authority to sell it. Cummings purchased the Bobcat for $1,000 cash and forgiveness of some $400 in debt owed him by Danny. All of that debt except for some $52 had been incurred prior to Danny's death.

Neither Tricia nor Cummings contacted co-administrator Jay Fowler prior to the sale. Fowler testified that some $600 to $750 of the $1,000 cash was used to pay wages for Danny's construction company and Tricia never accounted for the balance.

The sale to Cummings occurred in late August 1993 and about a month later, Tricia was removed as co-administrator. On September 27, 1993, an inventory and valuation was filed, made as of the date of Danny's death. That inventory listed the Bobcat and valued it at $3,500.

Fowler, as administrator, sought to recover the Bobcat from Cummings; Cummings, in his answer, admitted Tricia sold him the Bobcat and otherwise pled a general denial. No affirmative defenses were pled.

After a hearing, the magistrate judge found that Tricia sold the Bobcat without court approval and ordered its return to the estate.

On appeal to the district court, Cummings received a trial de novo. At the start of that trial, the district judge stated the question to be determined was whether the sale was in the ordinary course of business of the construction company. In his journal entry, the trial judge merely found for administrator Fowler and ordered the Bobcat returned to the estate.

On appeal to this court, Cummings states the issue to be whether he was a good faith purchaser for value and, thus, whether the trial court erred in ordering him to return the Bobcat.

This presents somewhat of a dilemma since Cummings did not lodge any objection to the adequacy of the trial court's findings

below. If Cummings is questioning the sufficiency of the evidence on appeal, he need not have objected to the findings below. If, however, the trial court's findings are objectionable on grounds other than sufficiency of the evidence, an objection at the trial court level was required to preserve the issue for appeal. See *In re Marriage of Bradley*, 258 Kan. 39, Syl. ¶ 2, 899 P.2d 471 (1995).

Our problem is that the issue the trial court said it was going to determine is *not* the issue on which Cummings seeks review. Since *Bradley* was not decided at the time of the present trial de novo, and in the spirit of judicial economy, we shall attempt to deal with the merits.

In legal effect, without specific authority from the probate court and without the knowledge or approval of co-administrator Fowler, Tricia (who did not testify at trial) sold the Bobcat to Cummings at a time Cummings knew Danny was dead.

Under K.S.A. 59-2242, personal property of an estate may be sold only on petition and order of the court. The statute also provides that no private sale of personal property can be made for less than three-fourths of its valuation under K.S.A. 59-1201 or for no less than three-fourths of the appraised value determined under K.S.A. 59-1202.

K.S.A. 59-1201 calls for the administrator to file an inventory listing the full and fair value of each item as of the date of death. K.S.A. 59-1202 deals with independent appraisals.

In the present case, Fowler's inventory listed the valuation of the Bobcat at $3,500. Obviously, a private sale for some $1,400 does not pass muster under K.S.A. 59-2242, even if Tricia had sought the court's approval for the sale. Accordingly, if K.S.A. 59-2242 controls, Tricia had no authority to sell the Bobcat and the trial court must be affirmed.

On the other hand, Cummings focuses on K.S.A. 59-1402, which provides that the court may authorize the personal representative to continue to operate the business for the benefit of the estate. In the present case, the magistrate judge entered such an order.

But the district judge on the trial de novo implicitly found that to be valid under K.S.A. 59-1402, any sale of estate personalty without court approval must be in the ordinary course of the busi-

ness being continued by the administrators. That is the only explanation for the district judge's statement that the question to be decided was whether the sale was in the ordinary course of business. For example, a personal representative authorized to continue a retail store should not be expected to receive prior court approval before selling some inventory to a customer.

The sale of equipment out of a construction company without the knowledge or approval of the co-administrator, however, is a different matter. Danny was not in the business of selling equipment, and there was only one Bobcat listed in the estate's inventory.

We hold that under the facts of this case, the sale by Tricia of the Bobcat was not in the ordinary course of the construction company's business. Accordingly, Tricia had no authority to make the sale to Cummings without court approval.

Further, the order authorizing the co-administrators to continue Danny's construction business was not without restrictions. It only allowed the co-administrators to continue the business to the extent "as is determined to be in the best interests" of the estate. To us, the order clearly contemplated the determination of best interests to be made by the probate court. No such determination was sought by Tricia pursuant to K.S.A. 59-1402, either before or after the sale.

That leaves us with the sole issue raised by Cummings: Was he a good faith purchaser for value of the Bobcat?

In this regard, Cummings appends to his brief an undated letter from a Bobcat dealer stating the Bobcat in question (which the author had not examined) should be worth about $1,000; this estimate did not include the trailer. This letter was apparently Exhibit 2 at the trial de novo but is not contained in the record on appeal. An appendix to a brief is not a substitute for placing a document in the record. We do not consider documents not contained in the record. See *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993).

In our view, this final question is answered by the principles stated in *Jordan v. Kancel*, 188 Kan. 292, 361 P.2d 894 (1961). There, the owner of TV sets (Jordan) rented them to Brinkman,

who was not in the business of selling TVs. Brinkman did have authority to rent the TVs to customers of his repair shop but had no authority to sell them. Brinkman then sold the sets to Kancel and absconded with the money. 188 Kan. at 292-93.

In the subsequent replevin suit, Kancel claimed to be a good faith purchaser for value. The Supreme Court disagreed, holding Kancel could not be considered a bona fide purchaser. Further, even if Kancel were considered a good faith purchaser without notice, he could not obtain title because Brinkman had no authority to sell the TVs. 188 Kan. at 294-95.

Under the facts of the present case, even if Cummings were considered to be a good faith purchaser for value, he could not obtain clean title to the Bobcat from Tricia, who had no authority to sell the property.

Under any of the rationales discussed above, the district court was correct in its ruling. See *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, Syl. ¶ 3, 863 P.2d 364 (1993).

Affirmed.